IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* CHARLES JACKSON | )<br>)<br>) |
| Plaintiff/Relator, | ) Civil Action No. 4:16-CV-92 |
| | ) |
| v. | )<br>) |
| SESOLINC GROUP, INC, *et al.* | )<br>) |
| Defendant. | ) |

## RESPONSE TO DEFENDANT'S COUNTER NOTICE

Plaintiff, the United States of America ("Plaintiff" or "United States"), by and through its undersigned counsel, notifies the Court of Plaintiff's response to Defendant Sesolinc's Counter Notice. Doc. 89.

On July 11, 2024, the United States filed a Notice containing a list of 129 containers needing repair pursuant to the Settlement Agreement and pursuant to the Court's instructions at the status conference held on June 24, 2024. Docs. 88, 88-1.

On July 31, 2024, Defendant filed a "Counter Notice" contending that the United States' Notice: 1.) included 33 new shelters that needed repair; 2.) included 13 entries with incomplete serial numbers that could not be matched to a Sesolinc serial number; and 3.) included serial numbers for 10 products that were not identified in 4-and-a-half years. This Counter Notice also included declarations from Sesolinc employee Cynthia Bowers and Sesolinc in-house counsel Matthew Bush ("Mr. Bush"). Docs. 89, 89-1, and 89-2.

The United States has taken the position throughout the extensive briefing of its Motion to Enforce, (doc. 81), that the Settlement Agreement only required the Sesolinc systems in need of repair "be identified to Sesolinc in writing reasonably identifying the system and its location" by the United States. *Id.*, pp. 2-3, 5-9; Doc 81-1 (Settlement Agreement). The United States has repeatedly argued why the very first spreadsheet that was timely given to Mr. Bush on November 7, 2019, (doc. 81-2 and 81-3), without serial numbers, adequately identified the Sesolinc systems in need of repair as required by the Settlement Agreement. Docs. 81, 75, 79.

When originally identifying the shelters in need of repair, the Army, the agency utilizing the Sesolinc shelters at issue in the Settlement Agreement, did so reasonably and with the best information it had available. The Army is not and was not able to adequately identify these shelters in need of repair by the serial number. As stated in the Affidavit of Kenneth Gary (Mr. Gary"), Transportation Management Specialist for the U.S. Army, the U.S. Army tracked the Sesolinc shelters by assigned unit, National Identification Number/Management Control Number ("NIIN/MCN"), and present geographic location. Doc. 75-1, ¶ 7(a).

Steps taken to identify these shelters included Mr. Gary submitting a request to all U.S. Army field units in the United States to locate and inspect all Sesolinc shelters that were within the U.S. Army inventory. *Id.*, ¶ 7 (b).

On October 22, 2019, Mr. Gary published Executive Order 010-20 directing all Army Commands to immediately identify, inventory, and inspect all defective shelters manufactured by Sesolinc. The original list of shelters identified 365

Sesolinc shelters. *Id.*, ¶ 7(c). This was timely provided to Mr. Bush on November 7, 2019, via email.[1] *Id.*, ¶ 7(d); Doc. 81-2.

On November 12, 2019, Mr. Bush sent an email back to Mr. Gary requesting that the Army identify each complete system on the list by serial number for repair planning. *Id.*, ¶ 8; Doc. 81-4.

Though not required by the Settlement Agreement, Mr. Gary nevertheless submitted a task to all ACOMs, ASCCs, and DRUs on November 13, 2019, requesting all field units who listed a defective shelter to add serial numbers to the items on the spreadsheet previously provided to Sesolinc counsel. Doc. 75, ¶ 9. On December 18, 2019, this list was provided to the U.S. Attorney's Office and then was subsequently turned over to Mr. Bush in a good faith effort to assist with the location of the defective shelters. *Id.*, ¶ 10; Docs. 81-8 and 81-9 (email and list of shelters needing repair to Mr. Bush noting that there were still some serial numbers missing but that the Army was working to get them to Mr. Bush).

On November 26, 2019, Mr. Bush notified the United States that "the Army fail[ed] to identify any items with sufficient particularity to allow Sesolinc to perform under the Settlement Agreement" and stated that "as the deadline for identification has expired . . ., all items are deemed accepted and not subject to repair." Doc. 81-8, p. 6.

---

[1] The Settlement Agreement required that the systems for repair be identified within 120 days following full execution of the Settlement Agreement, (doc. 81-1, Attachment A to settlement agreement, ¶ 2), which was November 11, 2019.

The systems in need of repair were identified in the most efficient way possible in the original spreadsheet that was sent to Mr. Bush on November 7, 2019. Docs. Doc. 81-2, 81-3. First, Army field units purchased items solely by National Stock Number ("NSN") and not serial number, because it is the NSN that identified the item being purchased. Doc. 75-1, ¶ 13. A serial number is nothing more than an identifier for one particular item within a series of like items and has no relevance when Army units are making a purchase because a serial number does not identify the item. *Id.* Without the NSN, a unit would not know the identity of the item. *Id.* To further identify the item, the ordinance issued by Mr. Gary included requirements to identify the items by Unit Identification Code (UIC), Unit Name, nomenclature, on-hand quantity, Army Organization, and present location. *Id.*, ¶ 15. The identification of the shelters was based on information traditionally used by the Army and known by the Army at the time. *Id.* Mr. Bush, not the Settlement Agreement, then asked the Army to identify the shelters by serial numbers, (doc. 81-4), and now Sesolinc is using the fact that the Army cannot identify these units via serial number as a reason to not comply with the repair provision of the Settlement Agreement.

Furthermore, the identification of the shelters was the only first stage of the repair process. Once the repair process begins, the Army still intends to have specific points of contact at each site repair location listed for Sesolinc to communicate with as the settlement agreement requires. Doc. 81-1, Attachment A to Settlement Agreement, ¶¶ 6 and 6.4. These points of contact at each Army base could easily

4

send pictures of the shelters needing repair or answer any outstanding concerns as to the shelters that the spreadsheets do not make clear.

In response to Defendant's Counter Notice, (doc. 89), the United States withdraws its request to repair the 46 shelters that are highlighted in yellow on the attached spreadsheet attached as Government Exhibit A. The original of this spreadsheet was submitted on July 11, 2024. Doc. 88-1. Because these 46 shelters were not submitted with the original spreadsheet of November 7, 2019, the United States now withdraws the request to repair the 46 highlighted shelters.

While it is true that 13 entries in the United States' Notice, (docs. 88, 88-1), had incomplete serial numbers, the Army has confirmed that 10 of these shelters highlighted in green are indeed Sesolinc shelters in need of repair. The Army agrees that 2 shelters highlighted in red are not Sesolinc shelters, and the United States withdraws its request to repair these 2 shelters. *See* Government Exhibit A. The Army is continuing to research the remaining 2 shelters highlighted in blue and will update the Court as soon as possible as to the origin of these 2 shelters.

It is also correct that 10 serial numbers were only recently added by the United States. However, the shelters in need of repair were reasonably identified on November 7, 2019, satisfying the United States' obligation. The pleadings show that the United States acted in good faith to assist Sesolinc by sending Sesolinc the serial numbers on all items, even though the United States was not required to do so by the Settlement Agreement. When Sesolinc filed notice that it did not intend to comply with the repair provisions of the agreement, the United States ceased forwarding

5

Sesolinc additional serial numbers as to the shelters needing repair to focus on enforcing the actual provisions of the Settlement Agreement. The updated serial numbers were voluntarily supplied on July 11, 2024. Doc. 88-1.

In conclusion, the United States adequately identified the shelters in need of repair on November 7, 2019. There are now approximately only 80 shelters that need to be repaired, and Sesolinc continues to shirk its responsibility under the Settlement Agreement to repair these items that cause potential hazards to the troops of our nation.

This 22nd day of August 2024.

    Respectfully submitted,

    JILL E. STEINBERG
    UNITED STATES ATTORNEY


    *s/ Shannon H. Statkus*
    Shannon H. Statkus
    Assistant United States Attorney
    South Carolina Bar No. 70410
    P.O. Box 2017
    Augusta, Georgia  30903

    *Counsel for United States*

## **CERTIFICATE OF SERVICE**

This is to certify that I have on August 22, 2024, served all the parties in this case in accordance with the notice of electronic filing ("NEF"), which was generated as a result of electronic filing in this Court.

                                          */s/ Shannon Statkus*
                                          Assistant United States Attorney